GARY M. RESTAINO
United States Attorney
District of Arizona
MATTHEW C. CASSELL
Colorado State Bar No. 38157
SARAH B. HOUSTON
Arizona State Bar No. 026691
Assistant U.S. Attorneys
405 W. Congress, Suite 4800
Tucson, Arizona 85701-5040
Telephone: (520) 620-7300
Email: Matthew.Cassell@usdoj.gov
         Sarah.Houston@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-23-02251-TUC-JAS (LCK) |
| Plaintiff, | GOVERNMENT'S AMENDED MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CRIM. P. 16 |
| vs. | |
| John Turscak, | (No Objection) |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, respectfully moves the Court for a protective order in this matter concerning disclosure. This motion contains an amended protective order, and defense counsel has no objection. The United States also respectfully requests that the Court deny as moot the first motion for protective order (Doc. 12) that was filed in this case.

**FACTS**

This case involves a high-profile victim and has been widely covered by the news media. The defendant has been indicted on one count of Attempted Murder, in violation of 18 U.S.C. §§ 7 and 1113, one count of Assault with Intent to Commit Murder, in violation of 18 U.S.C. §§ 7 and 113(a)(1), one count of Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 7 and 113(a)(3), and one count of Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 7 and 113(a)(6). (ECF Doc. 9) The offense

occurred at Federal Correctional Institution – Tucson, where both the defendant and victim were inmates. The defendant is now being housed at a different facility pending trial in this case.

The Rule 16 disclosure in this case includes, in part: (1) the victim's medical records (including radiology images and photos of the victim's numerous injuries), (2) BOP photos and video of the area near the assault, and (3) crime scene photos. The BOP photos and video depicts inmate witnesses to the attempted murder, staff members who responded and intervened, and the victim, bleeding severely and seriously injured, as he received emergency medical treatment. These photos and videos are not publicly available. They show exactly what areas the cameras cover and would also show blind spots. This information would be detrimental to institutional security were it to be made public or disseminated to other inmates. The video could also reveal the identity of inmate witnesses. The crime scene photos, taken while the victim was receiving medical treatment at the facility and after the victim was transported to the hospital, are graphic because of the amount of blood and images of the seriously injured victim.

The government initially filed a motion for a protective order in December 2023. (Doc. 12.) At that time defense counsel objected to the proposed protective order. Since that time, the defendant has been appointed new counsel.

After an evidence viewing and negotiations, Laura Udall, current counsel for defendant has <u>no objection</u> to the amended proposed order that the government is requesting in this motion.

### **LAW & ARGUMENT**

Federal Rule of Criminal Procedure 16(d)(1) grants the Court the authority to make appropriate orders with respect to any and all discovery and inspection of documents and tangible objects. "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). A "trial court can and should, where appropriate, place a defendant and his counsel under

enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969) (citing Fed. R. Crim P. 16). The Advisory Committee notes to the 1974 amendments to Rule 16 state that a protective order "would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed."

Permitting courts to issue protective orders governing discovery is consistent with the long-recognized premise that discovery materials are not public and are not historically available to the public or the press. *United States v. Anderson,* 799 F.2d 1438, 1441 (11th Cir.1986). "Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *Id.*; *see also Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33 (1984) ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."). This is in contrast to judicial records, which are generally public. *United States v. Wecht*, 484 F.3d 194, 208–09 (3d Cir. 2007), *as amended* (July 2, 2007).

Because disclosure is not inherently public, courts regularly grant protective orders for disclosure that pertains to BOP inmate records and BOP internal law enforcement operations and techniques. *See*, *e.g.*, *United States v. Wynona Mixon*, 4:14-cr-00631-JGZ-LAD, Doc. 18 (D Ariz., May 20, 2014) (blanket protective order issued in sexual abuse of an inmate case); *United States v. Edelberto Hernandez*, 1:20cr00048, Doc. 15 (D. CO, May 4, 2020) (protective order in a prison contraband case that occurred in a BOP facility). These protective orders protect the privacy of inmates, BOP employees, and the safe and orderly functioning of BOP facilities.

Additionally, The Crime Victims' Rights Act (CVRA) affords all crime victims, including the victim in this case, "the right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Courts have granted protective orders preventing dissemination of disclosure beyond the parties involved in a criminal case to protect a victim's right to fairness, privacy, and dignity. *See*, *e.g.*, *United States v.*

*Torres*, No. 20-CR-00418, 2020 WL 4500046, at *5 (D.N.J. Aug. 5, 2020) ("Providing Defendant unfettered access to and unlimited use of discovery materials containing the personal information of the alleged victims conflicts with the victims' rights under the CVRA."); *United States v. Tsethlikai*, No. 18–01392, 2018 WL 3801248, at *2 (D.N.M. Aug. 9, 2018) (the CVRA "requires that victims are treated with fairness, and with respect for their dignity and privacy, which are interests also at stake in the disclosure of [the victim's] medical records."); *United States v. Tsosie*, No. 18–00738, 2018 WL 2745114, at *5 (D.N.M. June 6, 2018) ("Keeping the confidential material confined to only those who need it, and requiring that [the victim's] name and personal information be redacted in public filings, protects [the victim's] privacy interest."); *United States v. Gakhal*, No. 15–00470, 2015 WL 5559852 (N.D. Ill. Sept. 17, 2015) (granting a protective order in reliance upon Federal Rule of Criminal Procedure 16(d)(1) and the CVRA); *United States v. Patkar*, No. CR. 06-00250 JMS, 2008 WL 233062, at *4–6 (D. Haw. Jan. 28, 2008) (upholding protective order for victim's emails in extortion case, "Congress has determined, through enactment of the CVRA, that the public interest lies in treating a crime victim with fairness and with respect to privacy.").

Here, the Rule 16 discovery to be produced includes information that may implicate prison security and safety, the safety of persons both within and outside the prison, law enforcement techniques or investigations, and other sensitive personal information of inmates and Federal Bureau of Prisons (Bureau) employees. The photos and videos depict other inmates who witnessed the attempted murder but were not participants. Allowing dissemination these photos and videos to others inside and outside of federal custody may put those inmates at risk of retaliation for either making statements to law enforcement or not participating in the attempted murder. It may also subject them to harassment and unwanted public attention simply because they happened to be present when the defendant tried to kill the victim. This would also create a chilling effect and could dissuade witnesses in other cases from providing statements because they do not want to be publicly identified.

Dissemination of the disclosure beyond the parties in this case creates an unnecessary risk to those involved.

Dissemination of this disclosure in a federal detention facility, would endanger the safety of the victim, defendant, inmate witnesses, and staff who witnessed the offense or were involved in its investigation. This is why the government is requesting an order preventing allowing the defendant to have access to his own copy disclosure, but preventing him from sharing, discussing, or otherwise disseminating the information to third parties.

Additionally, the disclosure in this case includes the victim's medical records and photographs and videos of the offense and subsequent life-saving medical treatment. The victim's BOP file and medical records contain sensitive, private information that is not publicly available. The victim's medical records, BOP file, and the photos and videos of the crime scene and the victim while he was receiving emergency medical treatment should be protected pursuant to the CVRA. The victim has a right to be treated fairly and with respect for his dignity and privacy. Permitting dissemination of photos of his attempted murder that show him seriously injured would deny him any semblance of privacy and dignity.

The government believes a protective order is appropriate and will expedite the discovery process, while also safeguarding the privacy and security of the victim and witnesses. The Protective Order details the limits on the use of these Rule 16 materials, both during the case and after its termination. The government is not requesting a blanket order that applies to all disclosure. The proposed protective order is tailored to specific materials and is meant to protect the victim's rights, the privacy and safety of witnesses, and the safety and integrity of safety measures in BOP (the views of the cameras).

The proposed protective order permits the defendant to review all protected materials and have his own copy.[1] The protective order prevents the defense team and the defendant from disseminating the materials and information within federal facilities, to the media, and to third parties who are not working on the case.

WHEREFORE, the United States respectfully requests that the Court issue an Order which provides that:

The victim's medical records, surveillance footage from FCI-Tucson, and photos of the crime scene (hereinafter "protected disclosure") disclosed in this case shall not, without written consent of the United States Attorney's Office, District of Arizona, or further Order of the Court, be disclosed to anyone except that such information may be disclosed to:

    a. Attorneys actively working on this case; and

    b. Persons such as staff, investigators, or experts who are regularly employed or associated with the attorneys actively working on the case whose assistance is required by said attorneys in preparation for trial, at trial, or other proceedings in this case.

Prior to providing protected disclosure to any individual listed above (who consents to the jurisdiction and Order of this Court), defense counsel shall provide such person with a copy of this Protective Order. Such person shall not further copy the protected disclosure or disseminate it without further order of the Court and shall return the protected disclosure to defense counsel at the conclusion of the proceedings in this case.

While the defendant is housed in the Special Housing Unit, the defendant may access or maintain a digital copy of the protected disclosure.[2] The defendant shall not

---

[1] This motion is not intended to impact the detention facilities normal procedures concerning what items a defendant may or may not have in his cell and when he can and cannot access items.

[2] This proposed order does not require the facility to alter any of its existing property or safety protocols.

provide, reproduce, or distribute in hard copy or electronic form any of the protected disclosure or information contained in the protected disclosure.

If defendant is moved to a different housing unit or facility, any protected disclosure produced in the case and in defendant's possession must be returned to defense counsel within 72 hours.

If defense counsel withdraws or is disqualified from participation in this case, any protected disclosure produced in this case shall be returned to the government within 10 days.

IT IS FURTHER ORDERED that the protected disclosure is for the use in the defense of this criminal case only. After the conclusion of this case, the protected disclosure covered by this Protective Order shall not be disclosed or disseminated by the defense except as necessary for appeals or post-conviction proceedings. The defendant must return any copies of the protected disclosure to defense counsel. Any such disclosure or dissemination must continue to comply with this Order. This Protective Order shall not expire.

Respectfully submitted this 8th day of March, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Matthew C. Cassell*
*s/Sarah B. Houston*

MATTHEW C. CASSELL
SARAH B. HOUSTON
Assistant U.S. Attorneys

Copy of the foregoing served electronically or by other means this 8th day of March, 2024, to:

Elena Kay, esq.
Jordan Malka, esq.
Attorneys for the Defendant

- 7 -